DETROIT CITIZENS' STREET-RAILWAY CO. *v.* BOARD OF PUBLIC WORKS OF DETROIT.

MUNICIPAL CORPORATIONS — STREET RAILWAYS — TURNOUTS — AUTHORITY OF BOARD OF PUBLIC WORKS.

*1. A municipal ordinance authorizing a street-railway company "to construct, use, and operate all necessary and convenient tracks for turnouts," etc., "wherever the same might be necessary," and accepted by the company, does not limit the company to the use of such turnouts, etc., as were necessary at the time the track was laid, but such as the necessities of the public travel should afterwards require.

2. Where the legislative control of the streets is vested in the common council, and the administrative control in a board of public works, *held,* that the board of public works was authorized to permit the railway company to put in such turnouts as were necessary.

---

*Head-notes by GRANT, J.

*Certiorari* to Wayne; Carpenter, Frazer, Rohnert, Donovan, and Hosmer, JJ. Submitted March 21, 1901. Decided May 7, 1901.

*Mandamus* by the Detroit Citizens' Street-Railway Company to compel the board of public works of the city of Detroit to grant relator a permit to put in certain switches. From an order granting the writ, respondent brings *certiorari.* Affirmed.

The Detroit City Railway was organized under chapter 167, 2 Comp. Laws 1897. In January, 1889, it was duly authorized by the city by ordinance to construct and maintain a single-track street railway along Chene and other streets. The ordinance authorized it "to construct, use, and operate all necessary and convenient tracks for turnouts, side tracks, curves, and switches, wherever the same might be necessary," the same to be constructed and in operation within one year from the date of the passage of the ordinance. It was constructed within the time. The relator is the successor by purchase of said railway, and operates it. On June 13, 1900, it presented a written application to the board of public works to put in four additional switches on Chene street, north of Gratiot avenue, to be placed exactly half way between the present switches. The application was denied solely for the reason that the authority of .the board of public works to grant such permits was questioned by the common council. Thereupon relator filed a petition in the circuit court for the writ of *mandamus* to compel the board to grant its application. The writ was granted, and the case is now before this court for review.

*Brennan, Donnelly & Van De Mark,* for relator.

*Timothy E. Tarsney,* for respondent.

GRANT, J. (*after stating the facts*). The sole power to convey authority to construct street railways is by the

statute of the State vested in the municipal authorities; the authority in this case being the common council. Counsel for the city cites section 18 of the original ordinance, which reads:

"If said grantees or their assigns shall fail to complete any of the aforesaid railways within the time prescribed, then the rights and privileges herein granted shall be forfeited as to any and every route therein established."

He then argues that this provision, and the requirement to construct the road within one year, "would seem to be conclusive upon the right of the grantee or its successors to make any other constructions or use any other portion of the street than that which they actually utilized within the time limited."

The charter provides that the common council "shall have power  *  *  *  to control, prescribe, and regulate the manner in which the highways, streets, avenues, lanes, alleys, and public grounds and spaces within said city shall be used and enjoyed." Charter, § 122. By the charter all the legislative power over the streets is vested in the common council. The administrative power over them is placed in the board of public works. The council is authorized to legislate, and the board is authorized to execute what the council enacts. Charter, §§ 316, 317, 324. The common council had exercised its legislative function, and thereby defined the streets which relator might occupy, and the character of the track to be placed and maintained thereon. The contract between relator and the city was that relator might construct and maintain a single track, with such turnouts as should be made necessary by the increase of travel. No further legislative act was necessary to confer this right. This right was not limited to those needed at the time the road was constructed. Both parties contemplated that travel might increase, and thereby more cars and more turnouts would be rendered necessary. It is apparently conceded by counsel for the city—or, at least, it is not disputed—that these turnouts are essential for the accommodation of the

public travel. Nor is any objection made to the places designated. The sole contention is that the power to act lies in the common council, and not in the board of public works. If a new grant of power from the common council were required, it would follow that the roadbed as originally constructed must remain so during the life of the relator, unless amicably changed; for a contract cannot be changed except by mutual consent. As held in the able opinion of the court below, the relator's right at the time of construction to lay switches, etc., was limited by public convenience, and it would not then have been permitted to lay more than the then traffic demanded; and that, when public travel demanded more, relator could be compelled to lay them. Upon the construction to be placed upon these contracts, see *City of Kalamazoo* v. *Michigan Traction Co., ante,* 525 (85 N. W. 1067).

We approve the conclusion and the reasoning of the opinion of the court below, and affirm the judgment.

The other Justices concurred.