MANNEL *v.* DETROIT, MT. CLEMENS & MARINE CITY RAIL-
WAY.

1. EMINENT DOMAIN — HIGHWAYS — ADDITIONAL SERVITUDE —
STREET RAILWAYS.

> The use of the streets of a city for a street railroad is not an
> additional servitude.

2. STREET RAILROADS—ESTABLISHMENT—REGULATION—CHANGE IN
ROAD—MANNER OF GRANTING AUTHORITY.

> An ordinance regularly passed and accepted is necessary, under
> section 6446, 2 Comp. Laws, to grant the right to build and
> operate a street railway in the streets of a city, but after a city
> has thus granted the right to operate a car line, subject to a
> provision that the location of poles, side tracks, spurs, and
> switches shall be under the control of the council, it may, by
> a mere motion adopted by the council, authorize the company
> to change the location of a curve in the track connecting a
> street with a cross street, since the duty of the council in this
> respect is ministerial and might be delegated to a committee
> or a city officer.

Appeal from St. Clair; Law, J.  Submitted January 5,
1905.  (Docket No. 14.)  Decided February 27, 1905.

Bill by William Mannel against the Detroit, Mt. Clemens
& Marine City Railway to restrain the changing of a curve
in defendant's track.  From a decree dismissing the bill,
complainant appeals.  Affirmed.

*Thomas Wellman*, for complainant.

*Byron R. Erskine*, for defendant.

McALVAY, J.  Complainant in this case is the owner
of certain lots at the intersection of Broadway and Water
streets, in Marine City, St. Clair county, which he occu-
pies for residence and business purposes.  The corner
building is, and has been for several years, used and oc-
cupied for a grocery store.  Complainant's son resides back

of the store building.    The complainant's home is next
south of the store.    The defendant company operates an
electric street railway along Broadway and Water streets,
under and by virtue of an ordinance of the city of Marine
City.    Shortly before the filing of the bill of complaint
and issuing of the injunction in this case, defendant com-
pany applied to the common council of said city for per-
mission to change the alignment of the curve of its track
at the corner of said Broadway and Water streets, and,
claiming such permission had been legally granted,
changed or lengthened the curve around said corner of
complainant's lot, thus bringing the track much nearer
complainant's property, and making it necessary, in order
to get space enough for the passage of vehicles between
the rail and the curb, to cut 3.3 feet from the corner of the
walk, leaving a space at that point of but 7.6 feet from the
rail to the curb.

Defendant company claims that this change was made
with the express permission of the common council, and
under the supervision of the proper officers of the munici-
pality; that the change was necessary, and that the city
council acted within its authority in allowing the change
to be made.

Complainant in his bill claims that the proceedings of
the council were irregular; that the change is an invasion
of his rights in damaging his property and business by
bringing the track so near his premises that his teams and
dray teams cannot get to his place to receive or deliver
goods without danger and inconvenience; that the corner
is so unsafe that farmers cannot bring teams there, and
all persons are in danger of injury by being caught in the
narrow place at the corner by a passing car; also that the
close proximity of the track to the corner is a serious men-
ace to all persons coming there.    He asked for and was
granted a temporary injunction, and prayed that such in-
junction might be made perpetual, to restrain defendant
from bringing the rail of the track nearer than eight feet
from the curb line of the street.    This curb line at the cor-

ner was an angle before it was cut back 3.3 feet and rounded off. The temporary injunction was afterwards modified by consent, without prejudice, to allow filling in around the track to make it safe for public travel.

Defendant further claims that complainant practically acquiesced in this change; that the original curve was dangerous, being too short, and was only temporary; that the change was good railroading, and made the corner more convenient to the public; and that complainant has abundant room on both streets for business purposes.

Complainant appeals from a decree of the circuit court denying the relief sought, and dismissing the bill without prejudice as to any remedy for damages at law.

This court has held repeatedly that the use of the streets of a city for street railway purposes was not an additional servitude, and that the grant of a right to construct and operate a street railway, with all necessary poles, wires, side tracks, etc., along the public streets, was within the powers of the municipality granted by the legislature, and that the location and construction of the road and changes relative thereto within the limits of a city were subject to the control and approval of the municipal authority, provided that the railroad so constructed and operated would not be a public nuisance, or for any special reason require the interference of a court. *Detroit City Ry.* v. *Mills,* 85 Mich. 634; *People* v. *Railway Co.,* 92 Mich. 522 (16 L. R. A. 752).

The dispute in this case does not arise upon any question as to the legality of the original grant to the defendant, but it is claimed that the action of the common council in granting the request to change the curve was irregular and void; that the resolution submitted was never acted upon; that the action was taken upon a motion that the request of the Rapid Railway Company be granted. It appears from the record that the request of the defendant company was the matter before the council at the time, although the name Rapid Railway Company was used in the motion; and the record also shows that this curve of

defendant company's road was the curve acted upon and permission granted to change, and the defendant company's road is a part of what is known as the "Rapid Railway System." The contention is that this permission to change the curve could only be given by an ordinance regularly enacted and accepted in writing by the defendant, for the reason that the statute under which defendant is authorized to act, being section 6446, 2 Comp. Laws, provides this method for street railway companies to obtain the right to construct and maintain car lines in cities and villages. This is true as to the original or subsequent grant of a right to construct or maintain a street railway, or any material portion of it, through and upon the streets of a city.

There are, however, certain things to be done in the operation and maintenance of such a road, which are incidental. The ordinance granting defendant certain rights in the streets of Marine City provided that "the location of all poles, and the location and construction of all side tracks, spurs, switches, * * * shall be under the control and subject to the approval of the common council." This ordinance made no provision for curves. It would be unreasonable to suppose the legislature intended that a railroad must turn from one street into another at right angles. It is reasonable, therefore, to hold that this was one of the incidentals to the construction of this railway, which was to be under the control of the common council. The common council, under the authority of the statute referred to, had entered into a contract with defendant company to construct and maintain its railway upon and along the streets of Marine City. By the terms of this contract certain matters incidental to this construction and maintenance were left under the direction and control of the council.

This court holds that the construction of curves to connect one street with another was one of those matters entirely under the control of the council, such control to be exercised in a reasonable and consistent manner, and by

proper action of the council through its proper officers. The care and control of the streets, under the charter of Marine City, was placed by the legislature in the council. The council, by ordinance, having granted to defendant the right under the statute to construct and maintain its railway upon certain streets in a certain manner, no further grant was necessary, but it was contemplated in the ordinance that those things usual and necessary to be done were to be left under the control of the council. It was not necessary to enact an ordinance. The council, by resolution or motion, could grant permission to change this curve. The duty of the council in respect to the location and construction of this curve was ministerial, and could be delegated to the committee on streets, or to a proper official. *Detroit Citizens' Street Ry. Co.* v. *Board of Public Works*, 126 Mich. 554.

The proofs show that it was necessary to lengthen this curve; that the old curve was too short, and was not safe. The council carefully investigated the subject, and gave its permission to lay this curve under the supervision and control of the committee on streets. The proofs also show the condition on both streets at this corner, as far as the surface of the streets is concerned, is smoother and better for travel than before the curve was moved, and that there is ample room in front and at the side of complainant's store to deliver or take away his goods, if reasonable care is exercised.

Whether the complainant has been damaged in his business and property by reason of the close proximity of the rail to the curb at his corner, is not necessary to determine in this suit.

The decree is affirmed, with costs.

MOORE, C. J., and GRANT, BLAIR, and HOOKER, JJ., concurred.