CITY OF DETROIT v. DETROIT UNITED RAILWAY.

1. MUNICIPAL CORPORATIONS—STREET RAILWAYS—EXPIRATION OF FRANCHISE—TRESPASS—HIGHWAYS AND STREETS.
   Where the rights of a street railway company in the streets of the city of Detroit had terminated by expiration of its franchise, it thereafter, by continuing to occupy the streets, became a trespasser, and the city had the right to compel it to vacate.

2. SAME—DETROIT CHARTER—POWERS OF COUNCIL.
   Under the charter of the city of Detroit, the duties of the council are both legislative and administrative.

3. SAME—ADMINISTRATIVE ACTS ACCOMPLISHED BY RESOLUTION.
   Matters of a purely administrative character may properly be accomplished by the adoption of a resolution.

215—Mich.—26.

4. SAME—STREET RAILWAYS—EXPIRATION OF FRANCHISE—HIGH-
   WAYS AND STREETS—RESOLUTION BY COUNCIL TO REPOSSESS
   STREETS—ADMINISTRATIVE ACTS.

 Where the rights of defendant street railway company in
the streets of the city of Detroit had terminated by the
expiration of its franchise, and no action by the city
council was necessary to terminate same, instructions by
the council, by resolution, to its legal department to begin
proceedings to repossess its streets was proper, since it
was an administrative act, and the contention that it
should have been by ordinance, because legislative in
character, cannot be sustained.

5. SAME—ORDINANCE—RESOLUTION—DEFINITION.

 An ordinance has been defined to be a permanent, con-
tinuing regulation, while a resolution is an act of a
temporary character, not prescribing a permanent rule
of government.

6. SAME—RESOLUTION—ORDINANCE—CONSTRUCTION.

 Where the adoption of a resolution providing for proceed-
ings by the city to repossess its streets and for the im-
position of reasonable restrictions upon defendant pend-
ing such action was immediately followed by the adoption
of an ordinance imposing certain restrictions upon de-
fendant, and there is no conflict between them, they
should be construed together, and the contention that the
resolution was repealed by the ordinance cannot be sus-
tained.

Appeal from Wayne; Dingeman (Harry J), J.
Submitted April 6, 1921. (Docket No. 21.) De-
cided October 3, 1921.

Bill by the city of Detroit against the Detroit United
Railway to determine the rights of defendant in the
streets of plaintiff city. From an order denying a
motion to dismiss, defendant appeals. Affirmed.

*Clarence E. Wilcox*, Corporation Counsel, for plain-
tiff.

*Donnelly, Hally, Lyster & Munro* (*Stevenson, Car-
penter, Butzel & Backus* and *Hinton E. Spalding*, of
counsel), for defendant.

STONE, J.   This case is in this court upon the appeal of the defendant from an order denying a motion to dismiss the case.   After spending much time in the examination and consideration of the numerous provisions of the charter of the city of Detroit, the action of the council and the authorities involved, we have reached the conclusion that the learned circuit judge made a proper disposition of the case.   We here insert his opinion as follows:

"On July 30, 1918, the following resolution was introduced in the common council of the city of Detroit by Alderman Bradley:

"'Resolved, that the corporation counsel be and is hereby instructed to institute proceedings forthwith for the purpose of securing judgment of ouster against the Detroit United Railway in all streets or parts of streets where its franchises have expired, in accordance with a decision of the Fort street case, and further,

"'Resolved, that Richard I. Lawson, who successfully fought the Fort street case for the city of Detroit, be retained as special counsel for the city to prosecute the aforesaid legal proceedings.'

"Referred to committee on public utilities.

"On August 6th, the committee on public utilities reported favorably on the resolution, excepting as to the employment of special counsel, which was left to the judgment of the corporation counsel.   This report was unanimously adopted by the common council on August 6, 1918.

"On August 9th, at a special meeting, the following resolution was adopted by the common council:

"'By Alderman Glinnan:

"'Whereas, the street railway franchise of the Detroit United Railway, or its predecessor in title, and the right to operate street railways upon the following streets and portions of streets in the city of Detroit have expired by limitation.   (Here follows description of streets the same as set forth in bill of complaint.)

"'Whereas, the said Detroit United Railway, by reason of its continued occupancy of the streets of the city of Detroit, after

the expiration of its franchises, has become and is a trespasser, and, it has thereby created, committed and continued a nuisance in the said streets of the city of Detroit which may be abated at any time by the properly constituted legal authorities of said city, and if it continues to occupy and operate cars upon said streets upon which it has no rights or privileges, such occupancy, and operation is by the sufferance of the city of Detroit, and subject to the legal impositions and restrictions of the city of Detroit by reason thereof. Now, therefore, be it resolved, and the common council of the city of Detroit especially declare, that all right and title on the part of the Detroit United Railway to such franchises and tracks maintained thereunder, in the said streets above mentioned wherein the franchises have terminated by limitation, are occupied and operated by the said Detroit United Railway by sufferance only, and without the express or implied consent of the city of Detroit.

"'And it is further resolved, that the said city of Detroit through its legally constituted officers, take immediate steps to terminate the rights of the Detroit United Railway therein, and pending such action impose proper legal and reasonable restrictions and impositions upon the said Detroit United Railway by reason thereof.

"'Be it further resolved, that the corporation counsel be instructed to take immediate steps to enforce the rights of the city of Detroit in regard to such streets, wherein such franchises have expired by limitation and re-possess itself of the same.'

"Immediately following the adoption of the last foregoing resolution the council adopted an ordinance commonly known as the 'Kronk ordinance.' By this ordinance it was sought to fix and establish maximum rates of fare which could be charged by any one operating a street railway in Detroit, the fare being fixed at five cents, or six tickets for twenty-five cents, with universal transfers, and covered franchise as well as non-franchise lines. It also provided for the sale and use of eight tickets for twenty-five cents during certain hours of the day, commonly known as workingmen's tickets. The validity of this ordinance was questioned by the filing of a bill seeking an injunction in the district court of the United States for the eastern district of Michigan. A demurrer was filed to the bill. The court upon the hearing denied the appli-

cation for injunction and dismissed the bill of complaint. Upon review, the Supreme Court of the United States reversed the judgment of the district court. In determining the matter upon review the Supreme Court was bound to take the allegations of the bill as true and held that these allegations for the purpose of the demurrer sufficiently alleged violation of the Constitution of the United States by the passage and enforcement of the ordinance. It therefore ordered the district court to hear the application for the temporary injunction, and to proceed to hearing and determination of the case upon the merits.

"On August 27, 1918, following the instructions contained in said resolutions of August 6th and August 9th, the corporation counsel instituted the present suit, alleging that by reason of the expiration of franchises in the streets named, the right of the company to occupy same had ceased, but that the company continued to occupy the streets under the claim that the public convenience required it to continue its operation, and disputed the right of the city to control it.

"The case is now before the court on a motion to dismiss, and the questions presented were summarized on the argument as follows:

"(1) Has the common council power under the charter to exercise control over the use of the streets of the city?

"(2) Should the authority of the present suit have been by ordinance, and not by resolution?

"(3) Was the resolution, if valid, repealed by the passage of the Kronk ordinance?

"1. Has the common council control over the use of the streets of the city? In other words, has the council control over who shall use or occupy the streets of the city? Section 28, article 8 of the Constitution, provides:

" 'No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein, without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and town-

ships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.'

"Section 12 (g) page 21 of the revised charter provides:

" 'To provide for the management and control of all property, including streets, alleys and other public places, belonging to the city, dedicated to its use, or under its jurisdiction; to make provision for its protection, preservation and improvement; and to authorize the construction of public buildings, buildings for public assemblages and necessary works of public improvement.'

"Section 1, page 139, Public Utilities:

" 'The common council shall have the general control of all persons, partnerships, associations or corporations operating within the city any public utility on, above or beneath the surface of the highways, streets, alleys and other public places for wires, poles, pipes, tracks or conduits.'

"A general right to control would include the right to control the use, and under the provisions quoted, the local authorities may control, within reason, the use of their streets for any purpose whatsoever, not inconsistent with the State law.    Such a right probably exists under the police power without any express authorization.    *People* v. *McGraw*, 184 Mich. 233; *Brennan* v. *Recorder of Detroit*, 207 Mich. 35; *People* v. *Railway*, 207 Mich. 143.

"2. Was the authority to institute this suit required to be expressed by an ordinance rather than by resolution?    The answer turns upon the question whether the substance of the resolution was legislative or administrative in its character.    Under the decision of the Supreme Court of the State of Michigan, in the so-called *Fort Street Case*, 172 Mich. 136, the court found that the Detroit United Railway was a continuing trespasser in the street where its franchise has expired.    This case was reviewed and affirmed by the Supreme Court of the United States, 229 U. S. 39 (33 Sup. Ct. 697).    I do not believe any official declaration of the common council was necessary to terminate the claimed rights of the Detroit United Railway upon those lines where its franchise expired.    It was only necessary to institute proper judicial proceedings for

the purpose of securing a removal from the streets of the property of the company. In other words, it was only necessary that the council direct the performance of an administrative act by an administrative official, namely, the corporation counsel, and this certainly could be done by resolution. *Detroit Common Council* v. *Engel,* 207 Mich. 106. The resolution passed by the council is, in my judgment, nothing more or less than a recital of the past expiration of franchise rights. I think the language of the resolution should be interpreted as merely a recital of past occurrences and the existing conditions, rather than as an affirmative declaration of the council terminating a then existing right. If it is so construed, the resolution is nothing more or less than a direction to the corporation counsel to institute necessary judicial proceedings on behalf of the city.

"3. Did the Kronk ordinance rescind the resolutions of August 6th, and August 9th? No provision in the ordinance expresses any intention of repealing or rescinding the resolutions. Any such result would have to follow as a matter of implication. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. *City of Detroit* v. *Railway,* 172 Mich. 153. There is serious doubt whether the Kronk ordinance is valid, in view of the cases of *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* 200 Mich. 146; *Traverse City* v. *Railroad Commission,* 202 Mich. 575; and *City of Kalamazoo* v. *Titus,* 208 Mich. 252. Whether the ordinance be valid or invalid, the answer to the question presented, it seems to me, resolves itself into one of intent. What was the intention of the legislative body in adopting the resolutions of August 6th and August 9th, the latter being immediately followed by the Kronk ordinance? The resolution of August 9th, which is controlling insofar as it modifies the earlier one of August 6th, clearly shows the intention of the council to have been that steps be taken to terminate defendant's rights in the streets where the franchises had expired, 'and pending such action,' that proper legal and reasonable restrictions and impositions be imposed. This resolution was immediately followed by the enactment of the Kronk ordinance, by which it was

sought to impose restrictions in the use of the streets by fixing the maximum rate of fare, etc. The council had the right to assume that a year or more would probably elapse before such ouster proceedings, if begun immediately, could be heard and finally terminated in the courts, and it extended to the railway company, whose rights in the streets had expired, the privilege of remaining there and operating its railway system, pending such determination of the contemplated proceedings, upon the terms prescribed by the ordinance. There is nothing inconsistent in the position taken by the council in this respect. It is true that the language of the United States Supreme Court, in the case of *Detroit United Railway* v. *City of Detroit*, 248 U. S. 429 (39 Sup. Ct. 151), would indicate that the passage of the Kronk ordinance was a new grant of power to the defendant to occupy the streets and operate its railway system. It must be borne in mind, however, that the only question before that court was whether the ordinance violated the Federal Constitution. The United States Supreme Court did not have before it the resolution of August 9th, which indicates that it was intended by the council that whatever rights were conferred by the adoption of the Kronk ordinance should continue pending the determination of the ouster proceedings.

"The motion to dismiss is denied."

1. But little need be said further upon the first proposition. In our opinion the question presented is fully answered in the so-called Fort street opinion (172 Mich. at page 158):

"The conclusion to be drawn from our determination of the different propositions discussed is that the contractual relations between these parties ended upon the expiration of the franchises, and all rights in the defendant company to occupy the city streets, and maintain and operate a street railway thereon, then terminated, and defendant thereafter became a trespasser; that complainant has the absolute and unquestioned right at any time to compel the defendant company to vacate the streets upon which these franchises have expired, and to require it to remove

its property therefrom within a reasonable time, and, if necessary for that purpose, to enforce its rights by a writ of assistance from this court."

2. Was the procedure by resolution in accordance with the requirements of the charter?   Under section 11 (page 20 of the revised charter) it is provided that the powers and duties of the council shall be both legislative and administrative in character.   Under section 17, page 24, it is provided that:

"All matters of legislation shall be presented, con-sidered and enacted by the council in the form of ordinances."

Section 10 of chapter 2 of the same title permits the electors of the city to force to a popular vote sub-stantially any ordinance passed by the common coun-cil.   It is this right of referendum that defendant claims it should have the right to invoke, which does not apply to a resolution.   Section 12, at page 20, pro-vides that the legislative powers and duties of the council shall be as follows:

"(g) To provide for the management and control of all property, including streets, alleys and other public places, belonging to the city, dedicated to its use, or under its jurisdiction; to make provision for its protection, preservation, and improvement; and to authorize the construction of public buildings, build-ings for public assemblages and necessary works of public improvement."

This section contains subdivisions from the letter (a) to the letter (t) and is followed by this language:

"Administrative Powers.
"Sec. 13. The administrative powers and duties of the council shall be as follows:
"(a) To confirm assessment rolls and to sit as a board of review to hear and determine appeals from assessments.
"(b) To approve all contracts to which the city or any board or commission thereof is party, except as

herein otherwise provided, all bonds given to insure the faithful performance of any work for the city, and all annual reports of city officers and departments made to the council as herein required.

"(c) To audit and allow or reject claims and accounts against the city, except as herein otherwise provided; and

"(d) To have such other administrative powers and perform such other administrative duties, as are prescribed by law or this charter."

From the foregoing it does not follow that every act of the council is legislation. Many of the duties enumerated are clearly administrative in nature and do not require ordinances to accomplish the results required. This fact is recognized in section 18 (page 24) where it is provided that

"every ordinance and every resolution or proceeding of the council except such resolutions and proceedings as relate to the matters set forth in paragraphs (a), (b) and (c) of section 12, * * * shall be presented to the mayor for approval."

In section 12, subdivision (g), one of the enumerated legislative powers is exercised by resolution. Paragraph (e) relative to budget is wholly administrative (although classed as a legislative duty) and could not be affected by ordinance. *Detroit Common Council* v. *Engel, supra.* Many other matters which involve control of streets, etc., are administrative and have always been properly accomplished by the adoption of a resolution. *Mannel* v. *Railway,* 139 Mich. 106.

The status of defendant with reference to the streets where its franchise had expired was fixed. Its relation was as defined in the *Fort Street Case.* No declaration of the council was necessary to terminate any rights. The resolutions of the council were administrative in character, and were merely a direction to its legal department to institute a lawsuit. They were, in our opinion, no more legislative in character

than any instruction by the council to start suit to recover unpaid taxes, or any form of debt owing to the corporation, or any other kind of a legal proceeding.   An ordinance has been defined to be a permanent, continuing regulation, while a resolution is an act of a temporary character, not prescribing a permanent rule of government.   See 28 Cyc. p. 348, and note 2.

3. It should be stated that the Kronk ordinance was adopted at the same session of the council that passed the resolution of August 9th.   They are not in conflict, and should be considered together.   In the case of *Detroit United Railway* v. *City of Detroit*, 248 U. S. 429 (39 Sup. Ct. 151), the ordinance was attacked on two grounds:

(1) That it impaired the obligation of the company's existing contracts.

(2) That it was confiscatory, and hence deprived the company of property without due process of law.

The opinion of the court concluded as follows:

"In our view, the allegations of the bill, for the purposes of the demurrer sufficiently alleged violations of the Constitution of the United States, in the action of the city, in passing and enforcing the ordinance in controversy.   The district court should have entertained the bill, heard the application for temporary injunction, and proceeded to a hearing and determination of the case in due course."

The case was reversed and remanded.   What the result may be upon the hearing does not appear.   That may be an additional reason why this case should be heard upon its merits.

An answer to the argument of defendant's counsel that under the above Kronk ordinance decision, and the *Denver Water Case,* 246 U. S. 178 (38 Sup. Ct. 278), new rights were given (which would be inconsistent with an intent to oust the company), is found

in the more recent decision of the United States Supreme Court in the Municipal Railway Election Case (*Detroit United Railway* v. *City of Detroit*) decided February 28, 1921, and reported in U. S. Adv. Ops. 1920-21, 356 (41 Sup. Ct. 285). In that case Mr. Justice Day, speaking for the court, said:

"Rights to remain in the streets are also claimed under the so-called Kronk ordinance, which was before this court in *Detroit United Railway* v. *City of Detroit*, 248 U. S. 429 (39 Sup. Ct. 151), in which this court, while re-affirming the principles laid down in *Detroit United Railway Co.* v. *Detroit*, 229 U. S. 39 (33 Sup. Ct. 697), found that the city had not up to that time availed itself of the right to compel the removal of the tracks in streets where the company had no franchise, but had passed an ordinance looking to the continued operation by the company of the street railway system for a limited period; and, that while it acted under this ordinance there was the equivalent of a grant to operate during its life, entitling it to a fair return; that the ordinance by its express terms provided for its amendment, or repeal, and, that unless amended or repealed it should remain in force for the period of one year. We do not perceive how that ordinance can now give rights to the company in the streets where the franchises have expired."

In our opinion the motion to dismiss was properly denied, and the order denying the motion is affirmed, with costs to the plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.