COMMON COUNCIL OF THE CITY OF DETROIT *v.* ENGEL.

1. MUNICIPAL CORPORATIONS—DETROIT CHARTER—BONDS.

By amendment to section 41, chap. 7 of the "old charter," in effect November 27, 1916, *held*, that the common council of the city of Detroit, with the consent of the board of estimates, had authority to issue bonds for the erection of buildings for hospital purposes.

2. SAME—BONDS—APPROVAL BY BOARD OF ESTIMATES.

Where the common council of the city of Detroit allowed and approved a certain sum, to be raised by taxation for the recreation commission fund, for the purchase of lands and buildings thereon for use as a play center, and the board of estimates refused the same as a tax item but passed it as a bond issue, as park and boulevard bonds, subject to the approval of the council, which body thereafter concurred, *held*, valid, although it would have been more orderly for the council to have acted first.

3. SAME—BONDS WRONGLY NAMED—VALIDITY.

*Held*, that bonds wrongly named are not therefore necessarily invalid, since it will be presumed that the proceeds of said bonds will be applied as legally authorized.

4. SAME—SEWER PURPOSES—AUTHORITY TO BOND.

Under the charter of the city of Detroit previous to its revision under the "home-rule law," the common council had power to raise by taxation for sewer purposes in one year $200,000 and also to bond for "such sums of money as shall be deemed necessary and expedient," provided the gross debt limitation was not exceeded.

5. SAME—BONDS—ILLEGAL PURPOSE.

There being no authority in said charter of the city of Detroit or in any special act authorizing the purchase of real estate "for extension of public service," bonds authorized for the purchase of certain frontage at the harbor line, *held*, invalid.

6. SAME—AMENDMENT OF CHARTER—VALIDITY OF BONDS.

Where the charter of the city of Detroit (Charter 1883, as amended) empowered the common council by and with the consent of the board of estimates annually to provide a public sewer fund, a public building fund, and a fund for the purchase or construction of public utilities, and to issue bonds therefor, and all necessary steps were taken under said authority to issue certain bonds for said purposes, without being submitted to vote of the people, *held*, that said bonds were valid although before said bonds were sold a new charter under the provisions of the home-rule act (Act No. 279, Pub. Acts 1909) went into effect requiring "approval by three-fifths of the electors voting thereon."

7. SAME—DETROIT CHARTER—BONDS—ORDINANCE—RESOLUTION.

The contention that action looking to the issue and sale of bonds should have been taken by ordinance rather than by resolution, *held*, not sustained, in view of title 6, chap. 1, § 6, of said charter.

8. SAME—BONDS—MUNICIPAL BONDS—SCHOOL BONDS.

*Held*, that the school bonds and library bonds of the city of Detroit are not to be included in the two per cent. limit of indebtedness for municipal purposes specified in the charter.

9. SAME—DETROIT CHARTER—CONSTRUCTION—REPEALING CLAUSE— SAVING CLAUSE.

*Held*, that, in the adoption of the new charter, construing the "repealing clause" and the "saving clauses" together, it was not the intention to abate the right to carry out the sale of bonds authorized under the old charter.

10. SAME—ANNUAL EXPENSES—CAPITAL EXPENDITURES.

Under title 6, chap. 7, § 5, of the "new charter," bonds may be issued to meet "capital expenditures" so-called, as distinguished from ordinary annual expenses of a department for the coming year.

Certiorari to Wayne; Hunt, Codd, and Hosmer, JJ. Submitted July 2, 1919. (Calendar No. 28,841.) Decided July 17, 1919.

Mandamus by the common council of the city of Detroit to compel George Engel, controller, to prepare and execute certain bonds. From an order granting the writ, defendant brings certiorari. Affirmed.

*Walter Barlow,* for appellant.

*Edmund Atkinson,* for appellee.

STONE, J. This case is here upon certiorari to review proceedings had in the circuit court for the county of Wayne on the petition of the common council of the city of Detroit, for a writ of mandamus commanding George Engel, controller, to prepare bonds of the city and to cause them to be duly executed and recorded in the books of his office and transmitted to the city treasurer for delivery to the parties to whom they have been awarded, incident to an effort to effect their sale. In the petition of the plaintiff to the circuit court there is not only a presentation of its contentions in support of the validity of the bonds under consideration, but a full presentation of the reasons upon which the controller based his refusal to prepare the bonds. In his answer and return the defendant admits all the facts presented, but he denies that from said statements any inference should be drawn that the bonds mentioned should be by him, as controller, prepared and transmitted to the treasurer of the city of Detroit for delivery to the persons

to whom they have been awarded, until their validity has been adjudicated, and his duty in the premises determined. And because of the matters which appear from said petition he denies that plaintiff is entitled to the writ of mandamus. The case was heard below before circuit judges George S. Hosmer, George P. Codd and Ormond F. Hunt sitting *en banc.* Judge Hunt was designated to prepare a written opinion. That opinion, signed by all of the judges who heard the case, appears in the record. It presents so clearly and thoroughly the questions involved and decided, and the conclusions reached are so in accord with our views, that we insert the same here:

"The contention in this case involves the validity of certain bonds authorized by the common council of the city of Detroit and about to be issued, but which respondent refuses to prepare, record and deliver in compliance with the provisions of the city charter respecting his official duties, on the ground that said bonds cannot be lawfully issued. It is conceded and it is manifest that if the bonds involved herein are valid, the preliminary proceedings relative thereto, and all of which were had previous to June 27, 1918, must conform in substantial respects to what is commonly known as the old charter of the city of Detroit as amended and also to the provisions of the new charter. Under authority of section 7, chapter 11 of the Detroit city charter, the common council by resolution authorized and the board of estimates of the city approved, except as hereinafter stated, the issuance of bonds as follows:

"*A. $100,000 Tuberculosis Hospital Bonds.*

"In the early part of 1917 and prior to the ensuing fiscal year beginning July 1, 1917, the common council and the board of estimates authorized and approved in the public health fund to be realized by the sale of bonds denominated 'public building bonds,' an aggregate sum of $1,070,000, of which $1,000,000 was, and still is, contemplated to be expended from time to time in the erection of a tuberculosis hospital. $100,-000 of the above bonds are involved in this suit, said

bonds having been sold to the National City Company of New York and Detroit in December, 1918.

"B. *$250,000 Receiving Hospital Bonds.*

"In the early part of 1918 and prior to the ensuing fiscal year beginning July 1, 1918, the common council and the board of estimates authorized and approved in the poor commission fund to be realized by the sale of bonds denominated 'public building bonds,' the sum of $250,000 to be expended from time to time in an additional unit to the receiving hospital. The entire $250,000 of bonds are involved in this suit, said bonds having been sold to the National City Company. ·

"C. *$165,000 Park and Boulevard Bonds.*

"In the early part of 1918 and prior to the ensuing fiscal year beginning July 1, 1918, the common council allowed and approved the sum of $165,000 to be raised by taxation, and to be expended as an item in the recreation commission fund for the purchase of land and buildings thereon for use as a play center; the board of estimates refused to allow the above item as a tax item, but passed it and allowed it as a *bond* item adopting a resolution whereby, subject to the approval of the common council, bonds in said sum of $165,000, to be known as 'park and boulevard bonds,' were authorized to be issued; the common council thereafter adopted the resolution of the board of estimates authorizing the above bonds in the above amount to be issued, and they are involved in this suit, said bonds having been sold to Matthew Finn in January, 1918.

"D. *$988,000 Public Sewer Bonds.*

"In the early part of 1918 and prior to the ensuing fiscal year beginning July 1, 1918, the common council and board of estimates authorized and approved in the public sewer fund to be realized by the sale of bonds denominated 'public sewer bonds,' an aggregate sum of $7,615,000 to be expended in building sewers; $988,000 of these bonds are involved in this suit, said bonds having been sold to Merrill, Oldham & Company, Boston, in November, 1918.

"E: *$200,000 Public Building Bonds.*

"In the early part of 1917 and prior to the ensuing fiscal year beginning July 1, 1917, the common council and board of estimates authorized and approved in the public building fund to be realized by the sale of

bonds denominated 'public building bonds,' the sum of $258,000 'to cover the cost of purchasing frontage of 172.17 lineal feet of ground at the harbor line to be used for the extension of public service.' See common council proceedings, April 24, 1917, p. 503. See record of action of common council proceedings, April 24, 1917, pp. 524-25. See record of board of estimates approval and common council proceedings, May 1, 1917, pp. 587-8.

"On June 25, 1918, the qualified voters of the city of Detroit adopted a home rule charter framed under the provisions of Act No. 279 of the Public Acts of 1909, as amended, and this charter became effective June 27, 1918.

"It appears by the petition in this case that all proceedings authorizing the above bonds were taken under the charter of 1883 as amended by the legislature and later by the electors under the home rule bill; further that none of said bonds were submitted to the electors for approval; that the above bonds were sold several months after the new charter became effective and they have not been issued and delivered to the purchasers, some of said purchasers having refused to accept said bonds because of objections to the legality of bonding powers and bonding proceedings.

"There are two classes of objections which may be raised to the validity of the above proposed issues; the first class relates to the law and facts of the individual case; the second class relates to certain fundamental objections which are applicable to all the bonds. These objections may be briefly summarized as follows:

"1. The several above bonds are not legal inasmuch as they have not been submitted to and approved by three-fifths of the qualified electors of the city of Detroit as required by subdivision (*e*) of section 5 of Act No. 279, Pub. Acts of 1909, as amended, under which said act the city of Detroit adopted its home rule charter effective June 27, 1918; said subdivision (*e*) reading as follows:

" 'Sec. 5. No city shall have power * * * (*e*) * * * to authorize any issue of bonds except special assessment bonds, refunding bonds, and emergency bonds, as defined by this act, and bonds which it is annually authorized to issue, unless

approved by three-fifths of the electors voting thereon at any general or special election.'

"The relator claims that the bonds in suit are bonds which the city of Detroit is annually authorized to issue.

"2. That all proceedings taken in the matter of the authorization and approval of the above bonds up to June 27, 1918, also all proceedings in the matter of the sale of above bonds, including the proceedings taken in January, 1918, were so taken by resolution instead of by ordinance as provided by section 17, chapter 1, title 3, of the new charter effective June 27, 1918.

"3. That if library taxes and bonds, and school taxes and bonds heretofore issued (i. e., prior to June 27, 1918), authorized to be issued in lieu of taxation must be included within the city tax limit of two per cent., then a part if not all of above bonds are illegal, because the total of city taxes and bonds authorized to be issued in lieu of taxation, together with the library and school taxes and bonds exceed said tax limit of two per cent. See petition, pp. 11 and 12.

"4. That the 'saving clause' in the new charter is not sufficient to continue in force proceedings taken before the adoption of the new charter, under which it is contemplated to issue the bonds involved herein. See petition, p. 12.

"5. That the authorization of $165,000 public improvement bonds to be issued for recreation purposes did not originate in the common council; that the common council did pass the above item as a tax item and that thereafter the board of estimates approved the item as a bond item, which approval was subsequently concurred in by the common council, and that this proceeding is so irregular in itself as to invalidate the issue of bonds based thereon.

"An examination of the provision of the old charter and amendments discloses that in the absence of a special authorization therefor by special act, the general power of the common council to issue bonds is defined and limited by the charter, section 7, chapter 11, as amended, and so far as the same is applicable to the facts in the instant case, the same reads as follows:

" 'SEC. 7. The common council shall also have power by and with the consent of the board of estimates to provide for the public sewer fund for the construction of trunk or public sewers, and a public building fund and a fund for the purchase or construction of public utilities, by borrowing upon the faith and credit of said city and upon the best terms that can be made, such sums of money as shall be deemed necessary and expedient, and to issue the bonds of the city therefor in lieu of raising the same by taxation,' etc.

"A. $100,000 Tuberculosis Hospital Bonds.
"B. $250,000 Receiving Hospital Bonds.

"The above proposed issue of bonds is considered together because the source of authority to issue them, and the limitations thereon, and the proceedings taken thereunder are governed by the same provisions of law. The original authority in the old charter to issue these bonds was contained in section 41, chapter 7 of the charter, which, among other things, provides:

" 'SEC. 41. The common council shall have power * * * to establish, organize and maintain an almshouse, and a hospital; to purchase the necessary grounds, and erect and provide for erecting the necessary buildings therefor, either within or without the city limits, and to use, control and regulate the same as fully as though located within such limits; and for such, purchase of hospital grounds, and for the erection of hospital buildings, the said common council shall have power to expend and appropriate out of the contingent fund of said city, a sum not exceeding fifteen thousand dollars.'

"In interpreting and construing the above provisions of said section 41, it seems clear that the power of the common council was limited to an expenditure out of the contingent fund to a sum not to exceed $15,000; the provisions of said section do not authorize the common council to issue bonds in any sum whatsoever, and in 1905 by Act No. 404, Local Acts 1905, the legislature authorized the city of Detroit to issue bonds in the sum of $100,000 for the purpose of erecting and equipping a hospital for contagious diseases. The common council exercised this power by an issue of bonds to that amount, and having exhausted its power under said local act, the common council was remitted to the power over hospitals as outlined in said section 41.

207—Mich.—8.

"In 1914 the common council, without having obtained further authority or power relative to hospitals, attempted to authorize under the guise of public building bonds $695,000 for hospital site and buildings. This attempted exercise of power by the common council came before the Supreme Court in the case of *Detroit Common Council* v. *Engel*, 187 Mich. p. 88, and a discussion of the hospital bonds appears in said opinion at pp. 98-101. In commenting upon the hospital bond proposition the Supreme Court notes an objection at page 99 as follows:

" 'That buildings for which public building bonds may be authorized and sold by the common council are public buildings, within the meaning of the charter, which does not include garbage plants or hospitals. Not only is a garbage fund and a hospital fund "otherwise provided for" in the charter, which at least raises a doubt as to the intent to include those subjects in the section relating to a public building fund, but the legislative interpretation of the council's authority in that connection makes plain that it does not, as subsequently shown.

" 'It is to be borne in mind that the provisions referred to are a part of the city charter granted by the legislature to Detroit before the constitution of 1909 gave cities the power, through the legislature, to adopt, revise, and amend their charters, and, as just pointed out, said charter remains in force until the city sees fit to change it. Before the common council could issue bonds to erect and equip a hospital for contagious diseases, it was found necessary to obtain authority to do so from the same power which granted the charter (Act No. 404, Local Acts 1905), and in like manner an amendment of the city charter was obtained (Act No 670, Local Acts 1905) to authorize the common council to issue bonds to the extent of $100,000 to provide a garbage and refuse plant. While it is now within the power of the city to amend its charter and authorize the council to issue further bonds for that purpose, we do not discover that it has done so, and, until it does, that authority does not rest in the council.

" 'The "public building bonds" proposed to be sold, and involved here, total $678,000. Exclusive of garbage reduction plant and hospital site and buildings, $625,000 public building bonds were originally authorized. It is to be assumed that the proceeds of any bonds sold will be applied as legally authorized.

" 'It follows from the foregoing that the writ of mandamus granted by the circuit court cannot be sustained in its entirety.

" 'Distinct determinations of the circuit court as to different proposed issues of bonds are involved and presented for review in this proceeding. The legal and illegal matters are independent of each other and plainly ascertainable. This court may therefore quash or correct such parts as are illegal and affirm as to those which are legal.

" 'We accordingly conclude, for the reasons stated, that the order for a writ of mandamus be affirmed as to the $200,000 public sewer bonds and the public building bonds to the previously authorized amount of $625,000 (deducting the excess from either the 30-year or 10-year issue as relators may elect), and reversed as to the other proposed issues, which are hereby held illegal; this without costs to either party.'

"The Supreme Court in the above opinion having determined that hospital bonds were not public building bonds within the meaning of the charter, and that the attempted authorization of such hospital bonds were illegal, thereafter an amendment to section 41 of chapter 7 of the old charter was proposed in the common council and thereafter adopted, the same was submitted to the electors and adopted November 7, 1916, in effect November 27, 1916, which, among other things, provides:

" 'SECTION 41. The common council shall have power to purchase real estate for use of the said corporation * * * ; also make appropriations, to be met either by direct tax levy or bond issue, for the purchase of hospital grounds either within or without the corporate limits of the city and for the erection of necessary hospital buildings and the maintenance thereof; provided, that no such bonds shall be issued without the consent of the board of estimates of said city.'

"It will be noted that in this amendment to section 41, the $15,000, the sum limited in the original section as above quoted, is eliminated, and in its stead, among other things, appears the phrase as aforesaid, 'also make appropriations, to be met either by direct tax levy or bond issue.'

"The resolution adopted by the board of estimates authorizing the bonds for the erection of a tuberculosis hospital appears as Exhibit 3 attached to the petition, and, among other things, appears the following:

" 'Resolved, that by and with the consent of the board of estimates bonds of the city of Detroit in the amount of $1,680,000,

which shall be denominated "public building bonds of the city of Detroit," be issued under authority of section 7, chap. 11, of the Local Acts of 1883, approved June 7, 1883, being an act entitled, "An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith, as amended, and all the other relevant provisions of the charter of the city of Detroit," etc. * * *.

" 'Resolved, that this board does hereby approve of the several items in the estimates of the public health fund hereinafter set forth, and does hereby approve of, consent to and authorize the issue of public building bonds as hereinbefore appears to have been determined upon by said common council in the sum of $1,070,000 to be applied as follows:

" 'Nurses' Home ........................... $65,000
" 'Tuberculosis Hospital, one unit............ 1,000,000'

"As above stated, all these proceedings were had in 1917 and prior to the ensuing year beginning July 1, 1917.

"The proceedings as already stated authorizing $250,000 receiving hospital bonds were had in 1918 and prior to the ensuing fiscal year beginning July 1, 1918. It is to be noted, however, that the appropriation was made for these bonds in the poor commission fund, while bonds for the tuberculosis hospital was made in the public health fund. They are both, however, classed as public building bonds.

"Relative to the proceedings, however, we find and determine as stated by the Supreme Court in its opinion in *Detroit Common Council* v. *Engel*, 187 Mich. at p. 100, 'it is to be assumed that the proceeds of any bonds sold will be applied as legally authorized.'

"We further find and determine that both the appropriations for the tuberculosis hospital and for the receiving hospital are not invalidated because of any objections raised in said *Detroit Common Council* v. *Engel, supra,* the same having been authorized by the above amendment to section 41. Other objections to the validity of these bonds and which are likewise applicable to all the bonds in question, will be considered later in this opinion.

"*C. $165,000 Park and Boulevard Bonds.*

"As to these bonds, as above stated, early in the year 1918 and prior to the fiscal year beginning July

1, 1918, the common council and board of estimates authorized, allowed and approved the sum of $165,000 to be raised by taxation to be expended as an item in the recreation commission fund for the purchase of lands and buildings thereon for use as a play center.

"As above stated, the common council allowed and approved the above sum to be raised *by taxation* and the same was duly referred to the board of estimates. This board refused to allow the above as a *tax item,* but passed it as a *bond issue,* adopting a resolution subject to the approval of the common council that bonds in the sum of $165,000 be allowed as park and boulevard bonds, and thereafter the common council concurred in the action of the board of estimates and the validity of all these bonds is involved in this suit.

"The above proceedings were taken in pursuance of an amendment to the charter of the city of Detroit adopted November 3, 1914, which went into effect November 14, 1914. This is a new chapter for the purpose of providing for a commission to be known as 'the recreation commission.' Provision was made that the commission should consist of ten members, five citizens of Detroit appointed by the mayor, together with the superintendent of schools, the park commissioner, the librarian of the public library, the police commissioner and the commissioner of public works.

"Section 4 of said amendment is as follows:

"'SECTION 4. The said city of Detroit shall raise by annual tax the necessary funds to provide for the establishment and extension of a recreation system under the commission through the use of facilities already owned by the city, and may raise moneys by annual tax in such sums or issue of bonds of said city for the acquirement of additional property or for the erection of necessary buildings for the further extension of the recreation system under said commission.'

"We find and determine that while it would have been more in accordance with orderly procedure for the common council to have originally authorized the appropriation and the same thereafter allowed and adopted by the board of estimates, still we are of the opinion that the proceedings by the common council and the board of estimates, as above stated, are not fatal to the validity of the issue.

"We likewise find and determine that the name of the bonds, to-wit, park and boulevard bonds, even if wrongfully so denominated is not fatal to their validity, adopting the reasoning of *Detroit Common Council* v. *Engel*, 187 Mich. at p. 100, to the effect that it is to be assumed that the proceeds of any bonds sold will be applied as legally authorized.

"This disposes of the special objections relating to this issue; the objections which are applicable to all the bonds will be considered later in this opinion.

"*D. $988,000 Public Sewer Bonds.*

"As above stated, in the early part of 1918 and prior to the ensuing fiscal year beginning July 1, 1918, the common council and board of estimates authorized and approved in the public sewer fund to be realized by the sale of bonds denominated 'public sewer bonds,' an aggregate of $7,615,000 to be expended in public sewers, and the above sum of $988,000 of these bonds is involved herein.

"Section 1 of chapter 11 of the old charter of the city of Detroit, among other things, provides:

" 'Section 1. The revenues and moneys of the corporation shall be divided into the following funds, viz.:  *  *  *

" '*Eight*. Public sewer fund, to defray the expenses of constructing and maintaining public sewers in said city;

" 'Section 4. The common council shall also have power annually to levy, assess and collect taxes, not exceeding two hundred thousand dollars, on the assessed value of all the real and personal estate in said city, made taxable by the laws of this State, in order to defray the expenses of constructing sewers, and for the purpose for which the sewer fund is constituted as above.

" 'Section 7, as amended. The common council shall also have power by and with the consent of the board of estimates to provide for the public sewer fund for the construction of trunk or public sewers, and the public building fund, and a fund for the purchase or construction of public utilities, by borrowing upon the faith and credit of said city, and upon the best terms that can be made, such sums of money as shall be deemed necessary and expedient, and to issue the bonds of the city therefor in lieu of raising the same by taxation: *Provided, however,* That the gross debt of the city, after deducting the means in the sinking fund of said city and not including bonds already issued by the

board of water commissioners (but bonds hereafter issued by said board of water commissioners shall be included) or bonds issued against special assessments, shall never exceed four *per centum* of the assessed value of all the real and personal property of said city and all bonds or other indebtedness issued or credit created in excess thereof shall be void. Bonds issued by authority of this section shall be respectively denominated "public sewer bonds," "public building bonds" and "public utility bonds," and shall mature in not more than thirty years from the date of issue, and bear interest at a rate not exceeding five *per centum* per annum.'

"We find no irregularity in the proceedings either of the common council or board of estimates relative to the authorization, appropriation or allowance of the above item.

"The first serious question is whether or not section 7 authorizes the common council to issue bonds in excess of the amount which may annually be raised by taxation as provided in section 4.

"Insofar as the levying and assessing of taxes is concerned, the common council by the provisions of section 4 is limited to the sum of $200.000 a year, and if the words in section 7, to-wit, 'to issue the bonds of the city therefor in lieu of raising the same by taxation' are given the ordinary construction, then all bonds for sewer purposes under the provisions of section 7 must be limited to $200,000 for any one year.

"We have examined the definitions of 'in lieu of' in both the general and law dictionaries and can find no definitions except 'in place of,' 'in room of,' or 'instead of.'

"We have called this to the attention of the assistant corporation counsel who made the oral argument in support of the petition, and he has conceded that unless 'in lieu of' is construed as meaning 'in addition to,' then and in that case the $200,000 limit in section 4 governs the instant case.

"If this were a new case we should have no hesitancy in giving the words the ordinary meaning, but we are confronted with the decision of the Supreme Court in *Detroit Common Council* v. *Engel*, 187 Mich. pp. 88-101, and find that the Supreme Court there affirmed the decision of the Wayne circuit court as to the authorization of $200,000 public sewer bonds which

were a part of an authorization of $503,000 for public sewers. See opinion of Mr. Justice STEERE, p. 90.

"We also find from an examination of the proceedings of the common council of the city of Detroit for a great many years past that it has been the habit of the common council of authorizing and issuing bonds in excess of $200,000 in individual authorizations and approvals.

"While we do not think that a practical construction ought in all cases to be controlling, we are disposed in the instant case to give such practical construction, together with the decision of the Supreme Court in the last case above cited, great weight, and, accordingly hereby overrule the objection made in the instant case, contenting ourselves with the observation that if it had not been so practically construed, both by the municipal authorities and the Supreme Court in both cases, we would be constrained to decide otherwise.

"Objections applicable to all the bonds will be considered later in this opinion.

"*E. $200,000 Public Building Bonds.*

"As above stated, in the early part of 1917 and prior to the ensuing fiscal year beginning July 1, 1917, the common council and board of estimates authorized and approved in the public building fund to be realized by the sale of bonds denominated 'public building bonds,' the sum of $258,000 'to cover the cost of purchasing frontage of 172.17 lineal feet of ground at the harbor line to be used for the extension of public service.'

"We have examined the record of the action of the common council proceedings and the record of the board of estimates approvals and find that the purpose of the purchase was as above stated.

"We have discovered no special act authorizing the purchase of real estate 'for the extension of public service.'

"If these bonds are authorized it must be in pursuance of section 7, chapter 11, which limits the powers of the common council to issue bonds in lieu of raising the same by taxation, 'to provide for the public sewer fund for the construction of trunk or public sewers, and the public building fund, and a fund for the purchase or construction of public utilities.'

"It nowhere appears in the record that this land is for any of the purposes mentioned in said section 7, and the purpose being mentioned in the resolution itself, there being no authorization in the charter for any such purpose, we find and determine that the authorization and approval of this purchase was invalid and, accordingly, the attempted issue of $200,000 public building bonds in this case is void.

"*Objections Applicable to All the Bonds Involved Herein.*

"1. The several above bonds have not been submitted to and approved by three-fifths of the qualified electors of the city of Detroit as required by subdivision (*e*) of section 5 of Act No. 279, Pub. Acts 1909, as amended, under which said act the city of Detroit adopted its home rule charter effective June 27, 1918; said subdivision (*e*) reading as follows:

" 'SECTION 5. No city shall have power (*e*) * * * to authorize any issue of bonds except special assessment bonds, refunding bonds and emergency bonds defined by this act, and bonds that it is annually authorized to issue, unless approved by three-fifths of the electors voting thereon at any general or special election.'

"It is conceded that none of the above bonds are 'special assessment bonds,' 'refunding bonds' or 'emergency bonds,' and if the above issues are valid, they must be bonds which the city 'is annually authorized to issue.'

"It will be noted that said section 5 is not a delegation of power to the city to issue bonds, but is a limitation upon that power, and after a careful search of the charter provisions relative to conferring such powers we find no other general power except what is contained in section 7, chapter 11 of the charter aforesaid.

"In *Detroit Common Council* v. *Engel,* 187 Mich. 88, we find that this same objection is made against the validity of the bonds involved in that suit, and at page 96 Mr. Justice STEERE, who delivered the opinion, among other things, says:

" 'As before stated, the course prescribed by section 7, chap. 11, of the charter, was followed in authorizing and issuing these

bonds, but it is urged that, with this limit fixed by a popular vote amending the section in question, bonds not exceeding the limit cannot be lawfully authorized and issued in compliance with the provisions of said section unless each issue is approved by a three-fifths vote of the electors at a general or special election, in compliance with subdivision "*e*" of section 5 of the home rule act of 1909, as amended by Act No. 203, Public Acts 1911. As amended said subdivision provides:

" ' "No city shall have power * * * to * * * authorize any issue of bonds except special assessment bonds, refunding bonds, and emergency bonds as defined by this act and bonds that it is annually authorized to issue, unless approved by three-fifths of the electors voting thereon at any general or special election."

" 'As originally enacted, the subdivision does not contain this restriction. Without it the authority of the common council and board of estimates to exercise the powers conferred and previously exercised under said section 7, chap. 11, of the charter, cannot be seriously questioned.'

"We are constrained to find that Mr. Justice Steere, who delivered the opinion, erroneously stated above 'as originally enacted, the subdivision does not contain this restriction.'

"We find from examination of the original enactment that the restriction was therein contained. What might have been the decision of the Supreme Court without this assumption we are unable to state. But in any view of the case, as already referred to, the bonds for public sewers and the municipal court building were approved.

"While not free from doubt, we are constrained to hold that bonds which are from time to time authorized to be issued in lieu of taxes and which may be annually levied, are bonds which the city 'is annually authorized to issue,' or, in other words, bonds which the city under annual recurring authority to tax may be issued in lieu of taxation.

"2. That all proceedings taken in the matter of the authorization and approval of the several issues of bonds were so taken by resolution instead of in the form of ordinances.

"As provided by section 17, chapter 1 of the new charter, effective June 27, 1918, said section 17 of chapter 1, page 24, is as follows:

" 'SECTION 17. All matters of legislation shall be presented, considered and enacted by the council in the form of ordinances. The style of all ordinances shall be "It is hereby ordained by the people of the city of Detroit." No ordinance shall embrace within its provisions more than one object. No ordinance shall be revised, altered or amended by reference to its title only, but the section or sections of the ordinance altered or amended shall be re-enacted and published at length. No ordinance shall be passed by the council within five days of its introduction, except in the case of a public emergency involving the peace, health, or safety of the people of the city, and no ordinance shall take effect, except in the case of such an emergency, until the thirtieth day after its approval, including the date of approval, but not the date of taking effect: *Provided*, that a two-thirds vote of all members elect shall be required to pass any ordinance within the period of five days herein prescribed or to give an ordinance immediate effect in the case of an emergency.'

"The above objection, if valid, relates not to matter, but to form, which form was entirely proper under the provisions of the old charter which governed at the time that the preliminary proceedings were had herein. The administrative proceedings under the new charter relative to the certification and issue of the bonds we do not consider ordinances proper at all, and the objection to the validity of the bonds upon this ground is hereby overruled.

"3. That if library taxes and bonds, and school taxes and bonds heretofore issued (*i. e.*, prior to June 27, 1918), authorized to be issued in lieu of taxation must be included within the city tax limit of two per cent., then a part if not all of above bonds are illegal, because the total of city taxes and bonds authorized to be issued in lieu of taxation, together with the library and school taxes and bonds exceed said tax limit of two per cent.

"At the outset it must be determined whether or not the city of Detroit as a municipal corporation which concededly exercises functions relative to schools and libraries in so performing its duties, is acting as a State agency, or, in other words, under our system, Are the control and management of schools and libraries, or either of them, State functions or municipal functions?

"This question came squarely before the Supreme Court in the case of *Attorney General* v. *Thompson*, 168 Mich. 511-527, and the validity of the bond issues in that case was directly involved by the charter limitation on the city's indebtedness. See opinion, p. 513.

"At page 518, Mr. Justice STEERE, who delivered the opinion of the court, among other things, says:

"'The limit of the gross debt of the city of Detroit for strictly municipal purposes was and is fixed by the charter at 2 per cent. of the assessed valuation, and under the Constitution and home rule act it can only be changed by a general revision of the city charter made pursuant to the provisions of the home rule act.

"'We then come to the question: Must the school and library bonds be included in computing and limiting the gross indebtedness of the city of Detroit as contemplated by its charter?

"'With reference to the library and school bonds, the same laws and rules of construction apply.'

"The learned Justice then reviews the various decisions of the court up to that time, and at page 526 concludes as follows:

"'Guided by the foregoing considerations, we are constrained to hold that the school bonds and library bonds of the city of Detroit were not intended to be, and are not, included in the 2 per cent. limit of indebtedness for municipal purposes specified in the charter.'

"The above opinion was handed down February 16, 1912. Since then the city of Detroit has extended its boundaries under the home rule bill, and in several cases the Supreme Court has held that an amendment under the home rule bill extending the boundaries of a city has no effect upon the boundaries of a school district within such system. *MacQueen* v. *Port Huron City Commission*, 194 Mich. 328; *Collins* v. *City of Detroit*, 195 Mich. 330; *Board of Education of Grand Rapids* v. *Bacon*, 196 Mich. 18.

"In 1915 the legislature passed Act No. 323 (Local Acts 1915), entitled 'An act to authorize the common council of the city of Detroit to borrow money for the purpose of completing the erection and equipping of the new main library in the city of Detroit.' Thereafter proceedings were had to issue bonds for the pur-

pose authorized, and the validity of these proposed library bonds was passed upon by the Supreme Court in the case of *Common Council of Detroit* v. *Engel,* 202 Mich. p. 544.   (Opinion filed July 18, 1918.)

"The Supreme Court held that said Act No. 323, Local Acts 1915, was a valid piece of legislation, and further that the authorization of the bonds by the municipal agencies was proper and that the bonds involved were valid.

"Neither in the prevailing opinion nor in the dissenting opinion filed by Mr. Justice FELLOWS, is any reference made to the case of *Attorney General* v. *Thompson,* 168 Mich. 511, nor do we find any decision of the Supreme Court limiting or modifying the doctrine announced therein, and without detailing all the decisions of the Supreme Court relative to the subject-matter, we are constrained to adhere to the doctrine announced in said opinion and decision, and we hereby hold and determine that school and library taxes and bonds should be excluded in determining the 2 per cent. limit of indebtedness for municipal purposes specified in the charter.

"4. That the 'saving clause' in the new charter is not sufficient to continue in force proceedings taken before the adoption of the new charter, under which it is contemplated to issue the bonds involved herein.

"We frankly state that it would have been better had the new charter contained this 'saving clause.' However, we must consider the entire situation. Preliminary proceedings of various kinds had been taken under the provisions of the old charter, and it was not to be supposed that the new charter necessarily invalidated such action if it conformed substantially to the provisions of the new charter. We think that, taking all the surrounding conditions into consideration with the observation of the Supreme Court in the case of *Attorney General* v. *Marx,* 203 Mich. 331, at p. 335, '2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490,' is applicable:

" 'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests.'

"Mandamus will. issue in favor of relator against respondent for all the bonds involved herein, excepting $200,000 issue of public building bonds embraced in paragraph 'E' of this opinion."

Referring to the subject of the public sewer bonds, the validity of which was sustained below, we are impressed with the following argument of plaintiff's attorney:

"The circuit judges sustained the validity of these bonds, but, in so doing, placed unnecessary stress, it seems, to me, on what has been done heretofore, as a matter of practical construction. I have conceded and do concede that 'in lieu of' means 'in place of,' 'in room of,' or 'instead of.'

"We are not dealing with a case in which there was authority to tax in a sum not to exceed $200,000, and authority to bond for a sum not to exceed $200,000, in lieu of taxation. We have a case in which there was authority to *tax* in a sum not to exceed $200,000, and authority to *bond for 'such sums of money as shall be deemed necessary and expedient,' in lieu of 'taxing for such sums of money as shall be deemed necessary and expedient.'* In other words, under the 'old charter' we could raise *by taxation,* for the purposes of the public sewer fund, no more in any one year than $200,000, but, for the same purposes in the same year we could bond 'for such sums of money as shall be deemed necessary and expedient.' "

We invite attention to the further discussion of plaintiff's attorney on this subject, in the brief, which we think justifies the conclusion that there was thus power to tax in a sum not exceeding $200,000, and *also* power to bond for "such sums of money as shall be deemed necessary and expedient," provided the gross debt limitation be not exceeded—all a part of the annual appropriation scheme, of the scheme for bonds which a city "is annually authorized to issue."

It is urged that it was because of this that the "public sewer bonds" were sustained in *Detroit Common Council* v. *Engel,* 187 Mich. 88, and *Attorney General* v. *Thompson,* 168 Mich. 511.

Upon the subject of the $200,000 public building bonds "to cover the cost of purchasing frontage of 172.17 lineal feet of ground at the harbor line to be used for the extension of public service," we agree with the views expressed and the conclusion reached by the circuit judges, in holding this attempted issue invalid.

The circuit judges did not discuss the question whether under the "revised charter," bonds may be issued to meet "capital expenditures," so-called, as distinguished from ordinary annual expenses of a department for the coming year. We are of opinion that section 5, chapter 7, title 6 (p. 136) of the "new charter" is broad enough to cover this expenditure, and that the question should be answered in the affirmative.

Should the things done by resolution of the common council, looking to the issue and sale of these bonds, have been done by ordinance? We think not. While section 17 of chapter 1 of title 3 of the "revised charter" provides that "all matters of legislation shall be presented, considered and enacted by the council in the form of ordinances," an examination of the other provisions of the charter shows that the power to make appropriations and issue bonds is conferred by title 6 (p. 108). It is in this title (see chapter 5, § 1, p. 125) that we find this provision:

"The common council may provide for public improvements and for refunding the public debt by borrowing upon the faith and credit of the city and upon the best terms that can be made, such sums of money as shall be deemed necessary and expedient, and issue the bonds of the city therefor, in lieu of raising the same by taxation."

It is in this title that all provisions of the charter are found concerning "finance and taxation." Nowhere in it is there a requirement that anything by it authorized is required to be done by ordinance—

in fact the contrary appears. In section 6 of chapter 1 of this title (p. 109) is the following:

"Each statement shall show the fund or purpose for which the amounts therein specified are to be raised, which statements, after having been adopted in the form of a *resolution* or *resolutions*, by a majority vote of all the members of the council, shall be, respectively, the basis for the levy and collection of taxes, and for the *issue of bonds*, for the purposes therein named."

Manifestly, there is no practicable way of working out all the incidents of a city's scheme of taxation and finances by resort necessarily to ordinances. Such evidently was not the intention of the framers.

Did the "repealing clause" of the "revised charter" operate in abatement of the right to carry out the sale of the bonds, authorized under the "old charter"; or did the "saving clauses" of the "revised charter" preserve the right?

While the repealing clause, standing alone, is quite sweeping, it must be read in connection with the "saving clauses," and all, taken together, must be interpreted from the standard of the end sought by their enactment.

"In construing statutes of doubtful meaning, courts are authorized to collect the intention of the legislature from the occasion and necessity of the law—from the mischief felt, and the objects and remedy in view—and the intention is to be taken, or presumed, according to what is consonant to reason and good discretion." *Sibley* v. *Smith*, 2 Mich. 487.

For the "saving clauses" see sections 2 and 3, title 10 (p. 152).

It is inconceivable that it was the design of the "revised charter" that these appropriations should abate, and the city be bankrupt on July 1st, and during all of its fiscal year under the new charter. Authority to collect taxes after July 1st abated, if authority to

sell bonds after that day abated. They must stand or fall together.

The situation is not controlled by *City of Detroit* v. *Chapin*, 108 Mich. 136 (37 L. R. A. 391).

On account of the great length of this opinion we refrain from further discussion of the questions involved. We are content with the conclusions reached by the learned circuit judges, and the judgment below is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.